**UNITED STATES of America**
v.
**Vincent John RAO, Defendant.**
**No. 65 Cr. 232.**

United States District Court
S. D. New York.
March 4, 1969.

Robert M. Morgenthau, U. S. Atty., for Southern District of New York, by Andrew M. Lawler, Asst. U. S. Atty., for plaintiff.

Vincent J. Fuller, Washington, D. C., for defendant.

## OPINION

HERLANDS, District Judge:

The Court delivers this opinion in connection with the sentencing of the defendant.

On March 17, 1965, the defendant was indicted on five counts of perjury charg-

ing violations of 18 U.S.C. § 1621 (1964), the general perjury statute. This statute provides for a maximum punishment of five years in prison or $2000 fine, or both.

The indictment charged that, from on or about February 10, 1964 up to and including March 17, 1965, the date of the filing of the indictment, the grand jury was conducting an investigation into possible violations of the Federal Narcotics Laws, and that "As part of said investigation the grand jury was inquiring into the activities and associates of certain individuals who were' believed to be participants in the illicit narcotics traffic. In addition, the grand jury was inquiring into possible sources of money used to finance narcotic transactions and the eventual disposition of any money derived from narcotic transactions."

The defendant had been called before the grand jury on February 14, 1964, April 24, 1964, and May 8, 1964. He invoked his fifth amendment privilege with respect to virtually all questions except for some personal data.

On January 21, 1965 the United States Attorney, with the approval of the Attorney General, made an application to this Court for an order granting immunity to the defendant. The application was granted, the defendant was directed to answer the questions, and he testified before the grand jury on four different occasions in January and March 1965.

On one of those sessions before the grand jury on January 22, 1965, he testified that he had gone to the Apalachin meeting in 1957 with Salvatore Tornabe and Joseph Rosado and that he had never previously told a different story to law enforcement officers about his trip to Apalachin.

The Government then claimed, and still claims, that he had previously informed the New York City Police Department that he had gone to Apalachin by himself.

On November 17, 1967, the defendant was found guilty, after a jury trial over which I presided, on Count Fifth of the indictment; and the jury disagreed on Counts First, Second and Third. Count Fourth of the indictment had been ordered severed on November 14, 1967, during the trial. The fourth count dealt with an alleged perjury revolving around the defendant's visit to Joseph Barbera's house in Apalachin, New York, on November 14, 1957, and whether he had ever told any law enforcement agency that he had traveled alone to that destination on that day.

The defendant was born on June 24, 1898. Thus, he is almost 71 years old. His wife is 68 years old.

Psychiatrically, the defendant is not suffering from any emotional disturbances or mental disorders. He does have numerous illnesses, largely due to old age. According to the authorities who have studied him and have reported to the Court, he is seen as a care case, primarily because of his physical condition, which includes obesity, poor heart sounds, a history of duodenal ulcers, bronchitis, arthritis, and multiple sclerotic conditions. The authorities who have studied him report: "There are no current contraindications to his being confined to an institution."

He was committed by this Court for study on November 22, 1968 pursuant to the provisions of 18 U.S.C. § 4208(b) (1964).

Under date of February 5, 1969, this Court received an appropriate report from the Director of the Bureau of Prisons, Myrl E. Alexander. Previously, the Court had received a presentence report dated December 12, 1967, from the Probation Service of this Court.

The defendant has submitted 17 letters from persons expressing their high regard for defendant's character and mentioning the charitable contributions to various worthwhile religious and communal causes.

The Court received these letters from Mr. Fuller, the defendant's attorney;

and the Court is making these letters part of the record.

In addition to the 17 commendatory letters, there are letters concerning the defendant's medical condition; two letters concerning the defendant's wife's medical condition; and a letter concerning a daughter of the defendant who has a medical condition. All of these letters will be made part of the record.

Of the letters referred to, eight are from religious and charitable organizations; three letters are from lawyers; one from an accountant; five from business associates.

The defendant presents this material in mitigation of any punishment.

The Court has carefully considered and evaluated each of these letters of recommendation, as well as the medical letters in behalf of defendant.

On the other hand, Assistant United States Attorney Lawler, the presentence report dated December 12, 1967, and the report from the Director of the Bureau of Prisons transmitted under date of February 5, 1969, assert that for many years the defendant has occupied a high rank in what is popularly called the Mafia or Cosa Nostra.

As to the information presented to the Court with respect to the defendant's alleged underworld connections, the Court observes:

■ 1. The Court has, in Judge Friendly's words, "discounted accordingly" information garnered by the probation officer that is "hearsay." United States v. Doyle, 348 F.2d 715, 721 (2d Cir.), cert. denied, 382 U.S. 843, 86 S.Ct. 89, 15 L.Ed.2d 84 (1965).

2. The Court has knowledge about Joseph Valachi since Valachi was tried before this Court and was sentenced by me to a term of 20 years for violations of the Federal Narcotics Laws. United States v. Agueci, 310 F.2d 817, 820 (2 Cir. 1960), cert. denied, Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963).

3. According to United States v. Bufalino, 285 F.2d 408, 414, n. 14 (2d Cir. 1960), the defendant was among the 58 men identified as having attended the Apalachin meeting on November 14, 1957; and the defendant was questioned but gave no explanation for his presence in the area.

The defendant was named as a co-conspirator but not as a defendant in Bufalino. The indictment in that case was dismissed by the Court of Appeals.

4. The fourth count of the indictment charged the defendant with perjury concerning statements made by him to law-enforcement officers about his having been in Apalachin, New York, on November 14, 1957. This count, however, was severed during trial. The defendant has never been tried on that count.

■ A sentence must be "based upon constitutionally permissible factors and, if based "upon clearly erroneous criteria," it may be vacated. United States v. Mitchell, 392 F.2d 214 (2d Cir. 1968). Cf. Majority and dissenting opinions in Verdugo v. United States, 402 F.2d 599 (9th Cir. 1968).

■ An alleged association with suspected or notorious criminals or a reputation for such association is not the equivalent of an "arrest." Even an "arrest" cannot validly be treated as a "conviction" for sentencing purposes. To do so would contravene due process of law. Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). See Note, Procedural Due Process At Judicial Sentencing For Felony, 81 Harv.L.Rev. 821 (1968).

■ A defendant's associates and his reputation are, of course, relevant biographical circumstances to be considered by the Court, along with other pertinent data, in evaluating the defendant's background, personality and characteristics and in forming a comprehensive judgment. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

■ But even in *Williams* Mr. Justice Black, writing for the majority, noted that the sentencing procedure is not immune "from scrutiny under the due process clause." (337 U.S. at 252, n. 18, 69 S.Ct. at 1084.)

■ Consequently, the defendant's alleged underworld associates and his alleged status in the Mafia or Cosa Nostra cannot and do not constitute a predicate or criterion for punishment.

The Court's judgment as to the punishment and the length of the sentence to be imposed herein is based upon reasons completely independent of the information respecting the defendant's alleged underworld connections and background.

■ The Court's judgment of sentence is premised upon the nature of the crime and related circumstances, to which the Court will now refer. These are the determinative factors in this defendant's sentencing.

■ There is a general basic public policy that witnesses in all judicial proceedings should testify truthfully. This policy is of fundamental importance to the administration of justice. This policy applies to all witnesses, whether before a grand jury or at a trial or at any other judicial proceeding. This public policy is of crucial importance in the context of this particular case.

Pursuant to the provisions of 18 U.S. C. § 1406 (1964), this defendant was granted immunity upon the application of the United States Attorney with the approval of the Attorney General.

■ A court order directing the defendant to answer questions and conferring immunity is in accordance with the special procedure set up by section 1406. This immunity provision is part of the narcotics laws.

The Court emphasizes the importance of this immunity provision which is part of the narcotics laws. This immunity provision was enacted by Congress for the specific purpose of enabling the law-enforcement authorities to detect, apprehend and prosecute those who violate the Federal Narcotics Laws.

Obviously, efforts on the part of the Department of Justice to detect and destroy the menace of narcotics racketeers should receive the strongest support of the courts for the protection of the public.

■ The defendant appeared before a federal grand jury that was investigating narcotics crimes. Having received a grant of immunity, it was his obligation to testify truthfully. United States v. Pappadio, 235 F.Supp. 887 (S.D.N.Y. 1964), aff'd, 346 F.2d 5 (2d Cir.1965), vacated *sub nom.*, Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

Instead of testifying truthfully, the defendant perjured himself, as the jury found. His conviction has been affirmed by the Court of Appeals, 394 F. 2d 354; certiorari has been denied by the Supreme Court, 399 U.S. 845, 89 S. Ct. 129, 21 L.Ed.2d 116; and the Supreme Court has denied a rehearing, 393 U.S. 972, 89 S.Ct. 390, 21 L.Ed.2d 386.

At the trial, the defendant, through his counsel, Mr. Wadden, admitted that his grand jury testimony was material to the inquiry then being conducted by the grand jury.

Under the foregoing circumstances, the Court regards the defendant's conduct as an aggravated kind of perjury. It is an affront to the administration of justice. It makes a travesty of justice. It is a frustration of the vital purpose of Congress when it enacted the immunity provision as a procedural device to obtain evidence against those engaged in the narcotics racket.

The defendant must be dealt with severely in order to vindicate the Congressional policy, and to protect the public by emphasizing that any witness who obtains immunity under the special provision of the Federal Narcotics Laws may not trifle with his oath and that, in exchange for the immunity thus granted, he is required to testify truthfully.

■ In view of all of the circumstances, the Court hereby sentences the defendant under the provisions of 18 U.S.C. § 4208(a) (2) (1964).

In the Court's opinion, the ends of justice and the best interests of the public require that the defendant be sentenced to imprisonment for a maximum term of five years and be fined the maximum fine of $2000, which is a committed fine.

The Court fixes the maximum sentence of imprisonment to be served, namely, five years; and the Court specifies that the defendant shall become eligible for parole at such time as the Board of Parole may determine.

The defendant is to be given credit for the time he has already been incarcerated. This amounts to 125 days. The records at the West Street, Detention Headquarters disclose that he was remanded on December 28, 1967, and released on bail on January 4, 1968; thus constituting seven days. He was remanded on November 6, 1968, and he is still in custody. This amounts to 118 days, making a total of time served of 125 days. The time has been computed in accordance with the provisions of Federal Rules of Criminal Procedure, Rule 45(a).

Pursuant to Federal Rules of Criminal Procedure, Rule 32(a) (2), the Court, having imposed sentence, wishes to state, out of an abundance of caution in order to protect the defendant's rights (although it is not clear that the provision applies since the defendant has already taken an appeal), that the defendant has the right to appeal. This Court itself expresses no independent opinion as to whether the right to appeal does apply at this stage of the proceedings. In any event, the defendant is advised that he may have a right to appeal and should consult with counsel, if he has a lawyer. If the defendant is unable to pay the cost of appeal, he may apply for relief to appeal *in forma pauperis*. This is pursuant to Rule 32(a) (2). I state that, on the record, to the defendant out of an abundance of caution.