**UNITED STATES of America,**

**Vincent John RAO, Defendant.**

**No. 65 Cr. 232.**

United States District Court,
S. D. New York.

Aug. 20, 1970.

---

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., New York City, for the United States; Harold F. McGuire, Jr., Asst. U. S. Atty., of counsel.

David Povich, Williams & Connolly, Washington, D. C., Patrick M. Wall, New York City, for defendant.

EDWARD    WEINFELD,    District Judge.

The defendant, now serving a five-year sentence at Lewisburg Penitentiary imposed by the late Judge William B. Herlands following his conviction of perjury, moves for a new trial upon a claim of newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure. In furtherance of the motion he seeks an order for his examination in this District by a doctor who, in the summer of 1968, gave him emergency treatment under circumstances hereafter referred to; he also seeks an order for an examination by a psychiatrist designated by him and by a neurologist to be agreed upon with the Government.

Early in 1964 the defendant was subpoenaed to appear before a Grand Jury in this District which was investigating illicit narcotic activities, their financing, the eventual disposition of the proceeds derived from narcotics transactions, and the role of organized crime in such illicit trafficking. Upon his initial appearances before the Grand Jury in February, April and May 1964 the defendant invoked    his    constitutional    privilege against self-incrimination with respect to virtually all questions except for some personal data. Thereafter, in accordance with the applicable statute,[1] immunity was conferred upon the defendant and he testified before the Grand Jury on four occasions in January and March 1965. On March 17, 1965 the defendant was indicted on five counts charging him with perjury before the Grand Jury. The case was tried to a jury and a verdict of guilty returned on the fifth count on November 17, 1967.[2]

The count upon which the defendant was convicted related to his testimony

---

1. 18 U.S.C. § 1406.

2. The jury disagreed as to the first three counts; the fourth count, which charged perjury with respect to defendant's visit

to the notorious Apalachin, New York, underworld gathering, was severed by Judge Herlands because of possible prejudicial effect.

as to the nature and extent of his contacts with a certain restaurant, and specifically, how often he visited there within the two weeks immediately preceding his testimony. The questioning was material, as his trial counsel conceded, since the Grand Jury was seeking to ascertain if he had any disclosed or undisclosed interest in the restaurant. The defendant testified that he had been there "[p]eriodically," "[f]our or five times, six times. I don't know." At another point he responded "[D]on't pinpoint me on this * * *. I was there periodically. I was there maybe four or five times. I can't answer you just in days."

The prosecution established through surveillance agents that defendant had been to the restaurant during the two week period every day except one. Furthermore, contrary to defendant's Grand Jury testimony that he had no interest in the restaurant, that the only reason he went there was to eat, that he was usually accompanied by his wife, and that he did not know the owner, the prosecution proved that he was never observed eating there, that he was almost always unaccompanied, that he was observed talking to Mr. Trenchy, from whom the restaurant took its name, to the manager, and to other employees and entertainers, and that his conduct suggested that he had a proprietary interest in the place. The defendant did not testify upon the trial. The defense urged that the discrepancies were not wilful or intentional; the prosecution contended that wilfulness and intent had been demonstrated by his evasiveness and the falsity of his other answers in his Grand Jury testimony.

On December 28, 1967 Judge Herlands imposed, pending a study and report from the Director of the Bureau of Prisons pursuant to 18 U.S.C., section 4208(b), a maximum term of five years and a $2,000 fine. The defendant was released on bail pending appeal. After the Court of Appeals had affirmed his conviction[3] and the Supreme Court denied certiorari[4] he was committed in November 1968 for the study which Judge Herlands had ordered under section 4208(b). Thereafter, on March 4, 1969, following completion of the study and receipt of the report and recommendations of the Director of the Bureau of Prisons, Judge Herlands affirmed the five-year sentence previously imposed with credit for 125 days, the period defendant had already been incarcerated, with a further provision that he was to be eligible for parole at such time as the Board of Parole might determine.[5]

The basis of the present motion is a contention that when the defendant testified before the Grand Jury in January and March 1965, he allegedly was suffering from an arteriosclerotic brain disorder which appreciably affected his ability to recall matters about which he was questioned; that this was unknown to defendant and his counsel at the time of trial in November, 1967; that it was discovered only recently by counsel based upon defendant's medical record maintained at the Lewisburg Penitentiary which contains an entry under date of July 7, 1969 of a statement by defendant to a staff psychiatrist: "N.P. I get blank minded—can't remember my nephew's name;"[6] also, on an incident which occurred in the summer of 1968 when defendant did not recall the combination of his safe. The defendant's

3. United States v. Rao, 394 F.2d 354 (2d Cir. 1968).

4. Rao v. United States, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968).

5. United States v. Rao, 296 F.Supp. 1145 (S.D.N.Y.1969).

6. Counsel incorrectly states in his affidavit that the record contains "an entry of July 7, 1969 by Dr. Rigger, Staff Psychiatrist at Lewisburg Penitentiary," that defendant suffered from what Dr. Rigger described as "being 'blank minded'" and that "he was unable to remember facts which he clearly knew such as his nephew's name." The statement records defendant's subjective complaints and not the doctor's diagnosis as counsel alleges.

attorney states that neither he nor the defendant was aware of the defendant's alleged arteriosclerotic brain disorder until March of this year when, as a result of an investigation triggered by counsel's receipt of the records containing the entry of July 7, 1969, a letter was received from a Dr. Vincent J. Panvini setting forth the matter now claimed to be newly discovered.

At the outset it is noted that not a single evidentiary fact supports the attorney's repeated assertions that the defendant at the time of his Grand Jury testimony had arteriosclerotic brain damage and the alleged loss of memory. However, to sustain that claim an order is sought directing that the defendant be examined by Dr. Vincent J. Panvini, a guest in the summer of 1968 at the Sun and Surf Hotel in New Jersey operated by the defendant. Dr. Panvini's affidavit on this motion states that he went to pay his bill in the hotel office, where he met the defendant for the first time; that in attending to Dr. Panvini's bill, the defendant "fumbled around the safe;" that he "noticed that he was not able to remember the combination of the safe; he had complete amnesia and then lost consciousness. He regained consciousness but could not remember the circumstances leading to the loss of consciousness or having amnesia." The doctor continues, "I gave emergency treatment and from my *superficial examination* I indicated to Mrs. Rao that her husband was suffering from cerebral spasms *probably* [7] due to arteriosclerosis (emphasis supplied). This observation was made without a thorough examination, therefore I asked Mrs. Rao to bring Mr. Rao to my office at a later date, for a complete examination, but * * * the appointment was not made and I never saw Mr. Rao again * * *." The doctor concludes with the general observation that "a person who suffers from cerebral spasms and anoxia of the brain due to arteriosclerosis has had arteriosclerosis for quite some time prior to the cerebral spasm." However, the doctor expresses *no opinion as to how* long prior to the incident the condition existed or that it existed at all at the time the defendant testified before the Grand Jury.

The issue, of course, centers about the claim as to the defendant's mental condition or memory when he testified before the Grand Jury more than five years ago, more than four years before he stated he "get[s] blank minded," and more than three years before he failed to recall the combination of his safe. The purpose of the proposed examination by Dr. Panvini, and further examinations by a psychiatrist and a neurologist, is to lay the foundation for a hypothetical question designed, as counsel puts it, "to determine whether defendant at the time of his testimony before the grand jury was suffering from an arteriosclerotic brain disorder which impeded his ability to recall and remember facts which were the subject matter of the inquiry." Thus, by defendant's own submission the basic predicate upon which relief may be granted (if other requirements for a new trial on the ground of newly discovered evidence are met) to wit, that in fact defendant more than five years ago had a condition which resulted in memory impairment, has not been established. What defendant seeks is a discovery, which the prosecution prefers to call a "fishing expedition," in an effort to sustain that claim.

Assuming, however, that the material now asserted to be newly discovered is in fact such, the defendant has failed to establish that with due diligence it could not have been discovered before or, at the latest, at the time of trial.[8]

---

7. The motion papers also contain a letter dated March 17, 1970 addressed to Mrs. Rao. It is this letter which defendant's attorney asserts first brought knowledge to him and his client of the latter's condition. This letter omitted the word "probably." It stated: "My examination at that time indicated that your husband had cerebral spasms due to arteriosclerosis * * *."

8. *See* United States v. Abrams, 357 F.2d 539, 550 (2d Cir.), cert. denied, 384 U.S.

Absent mindedness or loss of memory, whatever the cause, is a fact—as much a fact as the state of a man's digestion. This is not solely a matter for medical expert opinion although the basic cause therefor may be; its outward manifestations are observable to lay persons who are competent to testify thereto.[9] Yet, it is significant that no single affidavit of factual content has been submitted to support the allegation that when the defendant testified before the Grand Jury he then suffered from impairment of memory or absent mindedness. No affidavit has been submitted by his wife, his two daughters, his sons-in-law, any other member of his family, or any friend, as to the fact situation at that period. This omission and the lack of any explanation therefor is highlighted by the defendant's purpose to obtain expert psychiatric opinion as to the defendant's condition and memory retrospectively as of a period more than five years ago— opinions likely to be shrouded with doubts and ambiguities and of questionable probative value [10] in an area characterized by the uncertainty of meaningful diagnosis even under more favorable circumstances, as the Supreme Court has recognized.[11]

If, in fact, when he testified before the Grand Jury, the defendant manifested signs of loss of memory, the absence of the necessary proof, all within the personal knowledge of the members of his family, his friends and associates, is all the more striking since upon his trial, "lack of memory" was relied upon in part by the defense in urging upon the jury that the prosecution had failed to sustain its burden that the defendant's false answers were wilful or intentional.[12]

The attempt to overcome lack of diligence with respect to the alleged "newly discovered" evidence upon the contention that the defendant's subjective description of blank mindedness on July 7, 1969 while confined at Lewisburg led his counsel onto the trail which resulted in the discovery of the incident in the summer of 1968 described by Dr. Panvini, is specious. The incident was known to the defendant's wife at the time, as it was to the defendant. It was specifically called to her attention when Dr. Panvini requested that the defendant be brought to his office for a thorough examination; yet this was never done; and the record is singularly silent as to whether or not any other doctor was thereafter consulted with respect to the defendant's alleged condition. The assertion by defense counsel (defendant himself submits no affidavit) that neither he nor the defendant was aware of his "arteriosclerotic brain disorder" (assuming such was the fact in 1965 or even now) until it was reported by Dr. Panvini in March 1970 is at odds, certainly as to the Raos, with the doctor's statement that he "indicated to Mrs. Rao that her husband was suffering from cerebral spasms probably due to arterio-

1001, 86 S.Ct. 1922, 16 L.Ed.2d 1014 (1966); United States v. Costello, 255 F.2d 876, 879 (2d Cir.), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958). *See also* United States v. Edwards, 366 F.2d 853, 874 (2d Cir. 1966), cert. denied sub nom. Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782 (1967); Brown v. United States, 333 F.2d 723 (2d Cir. 1964); United States v. Fassoulis, 203 F.Supp. 114 (S.D.N.Y.1962).

9. *See* Equitable Life Assurance Soc'y v. Bomar, 106 F.2d 640 (6th Cir. 1939); 2 Wigmore, Evidence § 568 (3d ed. 1940).

10. *Cf.* Pate v. Robinson, 383 U.S. 375, 377, 387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Sullivan v. United States, 205 F.Supp. 545 (S.D.N.Y.1962).

11. *Cf.* Greenwood v. United States, 350 U.S. 366, 375, 76 S.Ct. 410, 100 L.Ed. 412 (1956).

12. Brief for Appellant at 26 et seq., Appellant's Appendix 126a, 152a–153a (Trial Court's charge), United States v. Rao, 394 F.2d 354 (2d Cir.) cert. denied, 393 U.S. 845, 89 S.Ct. 390, 21 L.Ed. 386 (1968).

sclerosis."[13] Again, no explanation is offered by the defendant or his wife for the failure to move for a new trial fast upon the heels of the summer 1968 incident, at which time defendant was enlarged on bail pending appeal. This is particularly striking in the light of the fact that final sentence had not been imposed since the report and study of the defendant under section 4208(b) of Title 18 were yet to be made.

Still other factors emphasize the lack of diligence with respect to the alleged "newly discovered" evidence. The defendant was convicted on November 17, 1967. A presentence report was ordered by Judge Herlands. On December 3, 1967 Dr. Nestor J. Totero who had been defendant's physician for more than thirteen years before that date, submitted to the Probation Office of this Court a statement of the defendant's physical condition. Dr. Totero noted among other conditions for which he had treated defendant: "1954—Continuous—Arteriosclerotic Heart Disease with a mixed affair of cardiac and bronchial asthma."[14] No affidavit of this physician, under whose care the defendant was both at the time of the Grand Jury testimony in 1965 and at his trial in November 1967, has been submitted on this motion. No explanation has been offered as to why he was not called to testify upon the trial as to an alleged condition which it is now claimed affected the defendant's memory.

Still other evidence exists that by the trial date the alleged recently discovered condition was known or could have been discovered with due diligence. Thus, at the time of the original sentencing in December 1967 Judge Herlands referred to the defendant's physician's report that had been submitted to the Probation Department and specifically mentioned among his other ailments "arteriosclerosis, a mixed cardiac and bronchial asthma."

Again, on March 4, 1969, when the defendant appeared for sentencing following the receipt of the report and recommendation by the Director of the Bureau of Prisons, the Court, alluding to defendant's illnesses largely due to old age (he was then 70 years of age) noted that they included "multiple sclerotic conditions."[15] And finally, to set at rest any doubt whatsoever that there has been no showing of due diligence is the very prison medical record with the item of July 7, 1969 which also quotes Rao as stating to the Staff Psychiatrist "[T]hat's what happened to me at the trial. I should've told the jury about my blank mind." If in fact the defendant suffered from a "blank mind" when he testified before the Grand Jury in January and March 1965, whatever its cause he, as well as his family, was certainly aware of it at the time of his trial in November 1967, and yet not a shred of evidence to substantiate the claim was offered.

The proof here is overwhelming that there has been a failure to meet the essential requirement that "the material asserted to be newly discovered is in fact such and could not with due diligence have been discovered before, or at the latest, at the trial."[16] It is the rule that motions for a new trial "are not favored and should be granted only with great caution."[17] This is not a case that meets the requirement of the rule.

The motion is denied in all respects.

13. Dr. Panvini's affidavit sworn to June 20, 1970 states he "asked Mrs. Rao to bring Mr. Rao to his office" at a later date. His letter to Mrs. Rao dated March 17, 1970 states "I told both you and your husband that I would want Mr. Rao at my office for a complete examination."

14. Dr. Totero's letter also noted indications of incipient kidney disease "probably on an arteriosclerotic basis."

15. United States v. Rao, 296 F.Supp. 1145, 1147 (S.D.N.Y.1969).

16. United States v. Costello, 255 F.2d 876, 879 (2d Cir.), cert. denied, 357 U.S. 937, 78 S.Ct. 1385, 2 L.Ed.2d 1551 (1958).

17. Id.