## UNITED STATES

v.

**Specialist Four William LUCAS, Jr., 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, US Army, Headquarters and Headquarters Company, 2nd Brigade, 1st Cavalry Division, Fort Hood, Texas 76545.**

### CM 434131.

U. S. Army Court of Military Review.

Sentence adjudged 17 Sept. 1975.

Decided 19 April 1976.

Appellate Counsel for the Accused: CPT Michael B. Dinning, JAGC; CPT John C. Carr, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Conrad J. Rybicki, JAGC; CPT William C. Kirk, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

DONAHUE, Judge:

Consistent with his plea, the appellant was convicted of attempted murder in violation of Article 80, Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. § 880. A court with members sentenced him to dishonorable discharge, confinement at hard labor for 20 years, total forfeitures and reduction to Private E–1. Pursuant to a pretrial agreement, the convening authority reduced the confinement portion of the sentence to six years.

Appellant's crime consisted of attempting to murder a fellow soldier by shooting him once in the head and once in each shoulder. Trial counsel made argument as to deterrence as a sentencing consideration similar to the arguments condemned by the United States Court of Military Appeals in *United States v. Mosely*, 1 M.J. 350 (March 19, 1976).

Trial counsel's argument was error in view of the holding in *Mosely, supra.* However, we find no prejudice. Appellant's offense was particularly aggravated and only his incompetence as a marksman saved him

from a charge of premeditated murder. We can conceive of no circumstance where the absence of the improper argument of trial counsel would have caused the appellant's approved sentence to be less than it is now.

The findings of guilty and the sentence are affirmed.

CLAUSE, Senior Judge, concurring:

Trial counsel's argument on sentencing exceeded the bounds established in the recent case of *United States v. Mosely*, 1 M.J. 350 (March 19, 1976). We must consider whether appellant was prejudiced thereby. I agree that he was not prejudiced.

I offer the following comments on the holding in *Mosely* to encourage the Court of Military Appeals to reconsider its decision. Whereas the court in *Mosely* indicated that their decision was in accordance with former practice and precedent, I do not agree with their analysis of the former cases and consider the present holding as establishing a new military rule.

Historically, military jurisprudence has recognized general deterrence as a valid consideration in sentencing. An early military justice text states that the "court should always take into account the fact that the object of punishment is not to take vengeance for the deed but to prevent crime and the repetition of the offense by the offender and *to deter others from similar acts.*" (Emphasis supplied.)[1] Courts were considered bound "to award a punishment in every respect proportioned to the offense found and calculated for the due maintenance of military discipline."[2] Colonel Winthrop noted that a proper consideration in punishment is its effect upon military discipline.[3] Modern military legal writers have also recognized the proper consideration of general deterrence in sentencing.[4] The Court of Military Appeals in *United States v. Barrow*, 9 U.S.C.M.A. 343, 26 C.M.R. 123 (1958) recognized the traditional basis for punishment and added the military consideration of retention in the service. Although discussed in the context of a convening authority's action, the court stated:

"In civilian courts, a judge is primarily concerned with the protection of society, the discipline of the wrongdoer, the reformation and rehabilitation potential of the defendant, and the deterrent effect on others who are apt to offend against society. Those are all essential matters to be considered by a convening authority but, in addition, he must consider the accused's value to the service if he is retained and the impact on discipline if he permits an incorrigible to remain in close association with other members of the armed services."

Probably the best statement of the current civilian standards is found in *United States v. Foss*, 501 F.2d 522 (1st Cir. 1974) wherein Judge Campbell stated:

" . . . the view that punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others. This is so even though general deterrence concerns itself not with the individual offender but with the sentence's impact on others. A commentator describes it as 'the only goal we can accept in advance for punishing all crimes committed by all persons, without scrutinizing the facts of the particular case in which punishment may be imposed.' "

\*　　\*　　\*　　\*　　\*　　\*

---

1. Dudley, *Military Law and the Procedure of Courts-Martial* (1907) p. 155.

2. O'Brien, *A Treatise on American Military Law and the Practice of Courts-Martial* (1846) p. 270.

3. Winthrop, *Military Law and Precedents* (2nd Ed. 1920), p. 397.

4. J. Snedeker, *Military Justice Under the Uniform Code*, 1953 at 402; Morrison, *The Role of Trial Counsel in Sentencing Proceedings*, 13 A.F. JAG L.Rev. 30 (1971); Moyer, *Justice and the Military*, § 2–661 (1972).

"The court's duty to 'individualize' the sentence simply means that, whatever the judge's thoughts as to the deterrent value of a jail sentence, he must in every case reexamine and measure that view against the relevant facts and other important goals such as the offender's rehabilitation. Having done so, the district judge must finally decide what factors, or mix of factors, carry the day. While the judge's conclusions as to deterrence may never be so unbending as to forbid relaxation in an appropriate case, they may nonetheless on occasion justify confinement although other factors point in another direction." *Id.*, at 527. [Citations omitted.]

The Court of Military Appeals in *Mosely* distinguished *Foss* on the grounds that military standards have been different. The court relied principally on the earlier cases of *United States v. Mamaluy*, 10 U.S.C.M.A. 102, 27 C.M.R. 176 (1959) and *United States v. Hill*, 21 U.S.C.M.A. 203, 44 C.M.R. 257 (1972) to establish that difference. However I do not believe those cases go that far. In *Mamaluy*, the court reviewed a sentencing instruction modeled after the provisions of paragraph 76a, Manual for Courts-Martial, United States, 1951. This paragraph encouraged uniform sentences and in "special circumstances, to meet the needs of local conditions, sentences more severe than those normally adjudged for similar offenses." The court found this portion of the instruction to be impractical, confusing and of doubtful validity. The members had no way of determining the sentences adjudged in similar cases. The consideration of unidentified local conditions or the concern of the civilian community about inadequate military sentences, was held to be so vague as to be valueless. In suggesting that instructions patterned after paragraph 76a be discarded the court stated:

"As a general proposition, they may not be unsound, and we have previously considered them in that light but, when beamed at a particular case in which the court-martial might try to apply them, there is some risk the court may veer away from its primary task of assessing a sentence appropriate to the person on trial. It is worth noting that we are dealing with imponderables which have no bearing on findings of guilt, and it is conceivable that subjectively court-martial members as well as civilian judges might properly give some consideration to the subjects mentioned, but objectively they should be of little moment and they should not be given the importance they naturally carry when given in instructional form."

In the companion case of *United States v. Brennan*, 10 U.S.C.M.A. 109, 27 C.M.R. 183 (1959), the court again condemned this type of instruction stressing that the resentment of a local community should not be the cause for a court adjudging a more severe sentence than would otherwise be appropriate. The court's decision in *Mamaluy* formed the basis for the subsequent elimination of these objectionable provisions in the 1969 Manual for Courts-Martial. DA Pam 27–2, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition) 1970, at 13–7. Neither of the foregoing opinions addressed the subject of general deterrence. The language of *Mamaluy* stressing "individualized" sentences should be considered in the light of the matter under consideration, but even in a broader sense it is not inconsistent with the generally accepted theory of general deterrence. *See United States v. Foss, supra.*

The case of *United States v. Hill, supra,* was a trial by judge alone and concerned the trial judge's statement to the accused after sentencing to the effect that "you take that message back to those other pushers." While some of the language of *Hill* tends to impugn the validity of general deterrence as a proper factor in sentencing, it is clear from the totality of the opinion that the court was concerned with the imposition of a sentence calculated to punish the accused for the acts of others engaged in the same enterprise. The opinion states:

"The fact that the accused was convicted of selling drugs may justify the judge's description of him as a 'pusher,' but it did not make him accountable for others en-

gaged in the same act, any more than he would be accountable for all thieves if he had been convicted of larceny. Reputation may be established by the company one keeps but the individual cannot be punished for the misdeeds of others. See *United States v. Rao*, 296 F.Supp. 1145, 1148–49 (S.D.N.Y.) (1969)."

The citation to *United States v. Rao, supra*, enforces my belief that the court was principally concerned with not punishing one for the crimes of others. In *Rao* the court stated:

"Consequently, the defendant's alleged underworld associates and his alleged status in the Mafia or Cosa-Nostra cannot and do not constitute a predicate or criterion for punishment."

In *Rao* the court noted Mr. Justice Black's opinion in *Williams v. People of State of New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Therein, Justice Black in a footnote refers to Judge Ulman's statement of the facts a judge should consider in imposing sentence. They are:

" '1st. The protection of society against wrong-doers.
2nd. The punishment—or much better—the discipline of the wrong-doer.
3rd. The reformation and rehabilitation of the wrong-doer.
4th. The deterrence of others from the commission of like offenses.

It should be obvious that a proper dealing with these factors involves a study of each case upon an individual basis.' "

That *Hill* did not concern general deterrence is further evident from the following language of the court:

". . . we have no hesitancy as to the legal correctness the trial judge's remark that the 'problem of heroin . . . must be dealt with . . . [among others] by the courts who [must] endeavor to deter others from engaging in conduct similar to' that to which the accused had pleaded guilty."

There is a distinction between the concept of general deterrence, which has as its purpose the deterrence of others, and the imposing of a stiffer sentence on one offender for the crimes of others. The latter concerns itself with fairness while the former is a traditional factor in sentencing.

It is my conclusion that the rule of *Mosely* that in the military general deterrence is a factor included within the maximum punishment prescribed by law for an offense and not a separate factor for consideration in adjudging an appropriate sentence is a new rule and a significant departure from traditional military jurisprudence. I believe that general deterrence should remain one of the several factors to be considered in military sentencing and that it is not inconsistent with the requirement that the accused's sentence be individualized. The needs of military discipline provide as much, if not more, justification for retention of general deterrence as a sentencing factor than the needs of the civilian community.

COSTELLO, Judge, concurring:

I agree with the result reached in the Opinion of the Court, though convinced that we have been given an unnecessary task with respect to the issue of prosecutorial argument for general deterrence considerations in deliberations on a criminal sentence.

As to the principal Opinion, I would emphasize the implicit holding that the sentence which the appellant offered to accept is relevant to the issue of prejudice. That proffered sentence is one useful benchmark when determining, as we did, that the error could not have deprived appellant of any opportunity to "beat his deal" at trial. The identification of such indicia of prejudice is imperative because the existence of error ". . . does not automatically require a rehearing on the sentence. *United States v. Peters*, 8 U.S.C.M.A. 520, 25 C.M.R. 24 (1957). What must still be considered is the effect of the errors." *United States v. Mosely*, 1 M.J. 350 (March 19, 1976). In short, the identified error here had no effect on the real result of the total trial-level proceedings. That it might have affected the inchoate sentence of the trial court is

but one consideration on the road to the final determination of "effect."

We have decided this case in accordance with the law announced by our higher tribunal. While so doing, we may also offer individual observations on the state of the law. *United States v. Heflin*, 23 U.S.C. M.A. 505, 50 C.M.R. 644, 1 M.J. 131 at note 6 (1975). Mine follow.

The *Mosely* decision found error in an argument by the prosecutor for a sentence sufficiently severe to deter others from similar action. Two bases were assigned for that finding of error. First, "The aspect of deterrence oriented to the general public appears in the maximum punishment prescribed for the offense." Second, military practice has established that the notion of general deterrence is not to be utilized ". . . in a way that allows the accused to be punished more severely than he justly deserves." 1 M.J. at 352.

The court in *Mosely* indicated that the military practice was consciously different from civilian practice. Such a difference could be proper; the sentencing of persons found guilty is clearly a legal function, but there are influences on such decisions that are not exclusively "legal." These influences must be dealt with, whether the sentencing authority is a judge, jury or other body.[1] Principally, the propriety argument turns on the ethical interests served by punishment and reasoned choices among such competing interests is the business of both judges and ethicists.[2]

Judge Clause's opinion shows that *Mosely* is a watershed, and I have two points concerning the choice made by the Court of Military Appeals therein. First, the general deterrence supplied by the criminal law does not come from a statement of maximum punishments. Secondly, general deterrence is an appropriate consideration in individual cases, i. e., a "sentencing factor."

## I

As to the function of a table of maximum punishments, I believe that such legislative acts are self-imposed restraints on the potential for excess extant in the coercive power of the state. The statement "We can do no more to you than 'X' " has little potential to affect human conduct in the person addressed. This remains true even when the statement is "We can do as much as 'X'," but there is no experience to make it real. However, a statement that "Upon the doing of 'X', 'Y' will result" is a price tag permitting individual assessment of costs. Thus, to the extent that time in jail is recognized as a cost of doing 'X', deterrence will come only from a table of *minimum* punishments or "streetwise" awareness of what courts actually do.[3]

A table of maximum punishments meets one philosopher's requirement for acceptance of a coercive mechanism to be imposed by the state, i. e., ". . . it is obviously essential to define precisely the tendency of its operation." Rawls, *A Theory of Justice* (1971) p. 241. It may be surprising to be quoting John Rawls in an argument for greater control of individual conduct, but he recognized that ". . . even in a just society it is reasonable to admit certain constraining arrangements to insure compliance. . . ." *Id.*, p. 577. Rawls was not speaking of specific mechanisms, but he was speaking of specific results. Even in a near-ideal society some human tendencies can only be influenced by the prospect of certain and unfavorable outcomes upon de-

1. *See* Frankel, *Criminal Sentences: Law Without Order* (1972), wherein Judge Frankel says: "Questions as to the purposes of punishment have, naturally, engaged philosophers, and we would do well to consult more the disparate things philosophers have taught." p. 57.

2. The ethical bases for the state's punitive intrusion upon personal liberty are (1) retributive, (2) general deterrence, (3) specific deterrence, (4) preventive, (5) rehabilitative. ABA

Standards Relating to Appellate Review of Sentences, Approved Draft, 1968, p. 126. The choice among these in civil society is for the judge. Coppens, *Moral Philosophy* (1924), p. 195.

3. General deterrence is but a part of the argument for minimum sentences. ABA Standards Relating to Sentencing Alternatives and Procedures, Approved Draft, 1968, p. 146.

viant behavior. *Id.*, § 39. However, the power of the state to impose those outcomes must be rigorously defined in advance. That is the function of pre-set *maxima*.

To return to the present world of courts, law and criminals, courts can best view tables of maximum punishments as buffers to the Eighth Amendment. Even the earliest tables were but "indicators" of an appropriate punishment for an offense which is attended by aggravating circumstances. The punishments listed were never a promise. Article VII, Executive Order of March 10, 1920 *in* M.C.M., 1920, p. 285.[4]

This element of uncertainty permits the proposition that such tables are a deterrent to be tested by Mr. Justice Holmes's "bad man" theory of law. Just as obsolete criminal statutes do not today prevent blasphemy and expectoration on public thoroughfares, the tables are too remote from everyday affairs and uncertain in their application to influence the "bad man." Thus, whatever deterrence is provided by the criminal law must come from an aspect of its operation other than restraints imposed on sentencing authorities.

## II

Deterrence theory has a place in military sentencing procedures today, just as it does in civilian practice. That place is both proper and necessary; proper because it does not offend against the maxim that a sentence ought to fit the individual criminal and necessary because the notion of deterrence is fundamental to our basic concepts of the criminal justice system in the United States.

The statement that application of deterrence theory results in a sentence higher than that which "otherwise would have been imposed" proceeds from a view of the criminal and his act which assumes that they can, somehow, be treated as separate from the society in which they existed when the act was committed and in which they continue to exist. In this sense, crime is a social act, an act denominated criminal because it has adverse consequences for others than the actor. When such an act is found to have been committed, the burdens of the wider consequences also fall upon the actor according to the demands of fairness.

Given that calling one criminal severely to task will deter others from doing the same, each criminal then incurs the risk of becoming an occasion for society's lesson-teaching. Thus, there is no "otherwise would have been imposed" that might be considered. Punishment removed from the societal context is totally inconsistent with the view of crime as a social act.

This analysis does not deny the relevance of individual circumstances, nor does it impugn the desirability of the maxim as a sentencing objective. There is an ordering to this business which now becomes clear. The criminal act in society is assessed as such, then the individually relevant considerations are to be adduced and applied toward the achievement of the goal announced by the maxim. There are patent weaknesses in the system, but only this ordering gives proper account to all that needs to be considered.

Thus, it is possible, logically and practically, to accommodate deterrence theory to the desire for "individualized" sentencing. Obviously, the analysis leading to that conclusion depends on the assumption that some kinds of criminal sentences do deter some people from some kinds of crime. This is not the place for a review of the vast literature on that proposition, so I will content myself with two observations in support of the assumption. Deterrence theory is the best of the ethical bases for punishment, the rest are marginal or totally unsatisfactory. Secondly, deterrence theory is a basic part of civilian criminal jurisprudence and there is no reason for its abandonment in our military system.

Saying that deterrence theory is the best of the ethical bases for punishment is saying only that it is the least assailable of them all. Data about recidivism weakens the idea of individual deterrence; retribu-

---

4. The earliest Order is in the 1917 *Manual*.

tion is just not an acceptable idea today, and it cannot exist in a system which also pretends to be rehabilitative; prevention is also made unpersuasive by the figures on recidivism and is objectionable as speculative punishment; finally rehabilitation is not a basis for punishment, it is a distinct social response to aberrant behavior.

General deterrence also involves undemonstrable predications about human behavior, but the theory is as hard to disprove as it is to prove—for the same reasons. It has been said that the total criminal process would be "bankrupt and indefensible" if general deterrence didn't work. Gaylin, *Partial Justice* (1974), p. 18. That is patently extreme, involving as it does a near-total rejection of all the other bases which few could do. However, the strength of the theory is in its generality; its foundation is in common sense and there is some evidence to support it. Bailey and Smith, *Punishment: Its Severity and Certainty*, 63 J. Cr L & Criminology 530, 531 (1974).

This view of deterrence theory as a *grundnorm* of the criminal law is supported by the ABA Standards Relating to Sentencing Alternatives cited above. The Standards contain a stated preference for the avoidance of "total confinement," i. e., uninterrupted jail terms, but would allow them on any of three grounds. The one relevant here is that failure to confine ".  .  . would unduly depreciate the seriousness of the offense.  .  .  ." *Standards, supra*, p. 81. The Commentary to that Standard gives two examples of "white collar" crime and a "crime of passion" in which no confinement would appear indicated, if the prisoner were viewed *in vacuo*. Nevertheless, an opinion is offered that confinement is indicated because of the adverse social consequences of a failure to do so. *Id.* p. 107.

Thus, there are both negative and positive reasons to reconsider the implications of *Mosely*. Even though each case may be tested for prejudice, the testing process is lengthy and the determinants of a sound decision are not always available. Egregious error introduced by prosecutorial mis-

conduct can always be reached on general grounds. Other prosecutorial conduct which conforms to community expectations and which is consistent with traditional and current legal theory ought to be tolerated.