UNITED STATES, Appellee

v

REGINALD B. HILL, Lance Corporal, U. S. Marine Corps., Appellant

21 USCMA 203, 44 CMR 257

No. 24,178

March 3, 1972

*Lieutenant David G. Grimes, Jr.,* JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant James R. Lamb,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Commander Michael F. Fasanaro, Jr.,* JAGC, USN, and *Major L. K. O'Drudy, Jr.,* USMC.

## Opinion of the Court

QUINN, Judge:

Appearing before a military judge, sitting as a general court-martial without court members, the accused pleaded guilty to conspiracy to sell heroin at the Marine Corps Base,

Quantico, Virginia, and to three specifications involving wrongful transactions in that drug, in violation of Articles 81 and 134, Uniform Code of Military Justice, 10 USC §§ 881, 934, respectively. Conviction of these offenses subjected the accused to dishonorable discharge, confinement at hard labor in excess of 30 years, and accessory penalties, but before trial, the convening authority had agreed with the accused to approve a sentence no more severe than one providing for a punitive discharge and confinement at hard labor for five years, with ancillary punishments. The trial judge imposed a sentence which included confinement for eight years. On review, the convening authority reduced the confinement to five years to accord with the pretrial agreement.

When his conviction came on for review before the United States Navy Court of Military Review, the accused challenged the correctness of the sentence proceedings at trial. The Court of Military Review concluded that errors had indeed been committed, but it determined that their adverse effects could be purged by its own reassessment of the sentence. Reassessing the sentence, the court reduced the period of confinement to two and one-half years but otherwise affirmed the sentence approved by the convening authority. On this appeal, the accused contends, in essence, that the trial errors are so material and egregious as to be correctable only by a redetermination of the sentence by a court-martial, the "primary" sentencing authority, rather than by "secondary" or derivative authorities, such as the Court of Military Review. United States v Voorhees, 4 USCMA 509, 531, 16 CMR 83 (1954); see also United States v Roberts, 18 USCMA 42, 39 CMR 42 (1968).

Although framed as two issues, one dealing with allegedly improper cross-examination by trial counsel and the other with the peculiarly "inflammatory" nature of certain matter admitted into evidence, the accused's objections basically concern, as stated in his additional brief, "evidence of misconduct not charged" and the accused's "knowledge of [other] sources [of] and contacts" with the use and sale of heroin at the base. Long excerpts from the record are cited in support of the objections. Passing over a preliminary question raised by the objections but not considered by the Court of Military Review as to the effect of provisions of the Manual for Courts-Martial, United States, 1969 (Revised edition), on the use of other evidence of misconduct in connection with the sentence (compare United States v Worley, 19 USCMA 444, 42 CMR 46 (1970), with United States v Averette, 17 USCMA 319, 38 CMR 117 (1967)), we accept as correct for purposes of this appeal, the court's conclusion that the "military judge considered . . . improper evidence of uncharged misconduct . . . in arriving at the sentence."

Improper consideration at trial in connection with the sentence of evidence of other misconduct is, in the usual case, correctable on review by reassessment of the sentence in light only of the admissible evidence. United States v Rodriquez, 17 USCMA 54, 37 CMR 318 (1967); United States v Ogden, 20 USCMA 193, 43 CMR 33 (1970). Although the Court of Military Review made such reassessment here by reducing the period of confinement from five to two and one-half years, the accused contends that, if allowed to stand, the relief accorded might still result in a "miscarriage of justice." See United States v Roberts, supra; United States v Scott, 21 USCMA 154, 44 CMR 208 (1972). While not separately recited, he advances two arguments to support this contention. In the first, he postulates the existence of a "fair possibility" that, without the material determined to have been improperly considered in the original sentence, a court-martial might not adjudge "a dishonorable discharge or such lengthy confinement." The most direct answer to this contention is perhaps the accused's own

pretrial determination of what he regarded as a fair and acceptable punishment for the offenses to which he pleaded guilty. See United States v Johnson, 19 USCMA 49, 50, 41 CMR 49 (1969). Aided by civilian and military counsel, and presumably considering the circumstances most favorable to him, the accused proposed a sentence, which included a punitive discharge and confinement at hard labor for five years. By the action of the Court of Military Review he is subject to confinement for two and one-half years. We have scrutinized the admissible evidence, including the nature, the number, and the circumstances of the offenses of which the accused stands convicted and the matters in mitigation, and we are not persuaded that, considering only the admissible evidence, a court-martial would have adjudged a sentence significantly less severe than that approved by the Court of Military Review. Cf. United States v Wood, 18 USCMA 291, 297, 40 CMR 3 (1969); United States v Roberts, supra; United States v Scott, supra.

In his second argument, the accused asserts that the trial judge was so prejudiced against him as ▮▮▮▮▮▮▮ ▮ to be disqualified from imposing sentence. In United States v Lynch, 9 USCMA 523, 527, 26 CMR 303 (1958), we noted that a board of review (now the Court of Military Review) has no power to adjudge an original sentence; as a result, we concluded that the board of review could not correct, by reduction, the sentence of a prejudiced court "because it is impossible to say at what sentence an unprejudiced court would have arrived." The accused alleges that the trial judge's remarks throughout the sentence proceedings "make it abundantly clear that he was in fact prejudiced as to [the] sentence." Reference is made to the Court of Military Review's conclusion that the sentence "was based in part at least" on the judge's "vindictiveness or rancor," as evidenced by the following remark after his announcement of the sentence: "Now you take that message back to those other pushers."

We, like the trial judge, have no doubt that, on the basis of his pleas of guilty and his direct testimony, the accused was a pusher of heroin; we find support beyond all doubt, in the admissible evidence, for the trial judge's determination that he could not "really buy the excuse" given by the accused that he was dealing with heroin in order to help other Marines on the base by keeping them from "bad sources." Also, we have no hesitancy as to the legal correctness of the trial judge's remark that the "problem of heroin . . `. must be dealt with . . . [among others] by the courts who [must] endeavor to deter others from engaging in conduct similar to" that to which the accused had pleaded guilty. As we read the judge's remarks, including that cited by the Court of Military Review, they express, in context and in language he apparently thought the accused would better understand than that usually used in judicial exposition, the reasons he believed justified the sentence he imposed. With due respect to the judgment of the Court of Military Review, we cannot accept its conclusion that the trial judge's remarks demonstrate "vindictiveness or rancor." The fact that the trial judge limited the period of confinement to approximately a fourth of the authorized maximum is itself opposed to a conclusion that the sentence was the product of malignity of spirit and intention. Yet there is a disturbing factor in the trial judge's remark.

Unmistakably, the judge intended that the sentence be not only an appropriate punishment for ▮▮▮▮▮▮ ▮ the accused but also a warning to others. However, each accused must "be given individualized consideration." United States v Mamaluy, 10 USCMA 102, 106, 27 CMR 176 (1959). It violates this principle to predicate a sentence upon factors of aggravation "not supported by testimony and which operate as a one-way street against the accused" because he "cannot possibly rebut [them] by any reasonable means." *Id.*, at page 107. It is wrong, for example,

to be influenced in the imposition of punishment by a policy which mandates a particular penalty. See United States v Fowle, 7 USCMA 349, 22 CMR 139 (1956); United States v McCoy, 429 F2d 739 (CA DC Cir) (1970). In *Mamaluy*, supra, we condemned consideration of "special circumstances to meet the needs of local conditions." Here, the trial judge apparently believed that the sentence he imposed upon the accused should also operate as a deterrent to other "pushers." Whether that ancillary purpose can be served is subject to "variables not susceptible of proof." *Id.*, at page 107, and recourse to it as an aggravating circumstance disregards the basic concept in sentencing that punishment not only fit the crime, but be responsive to the character, the background, and potential for rehabilitation of the particular accused. United States v McCoy, supra, at page 743. The fact that the accused was convicted of selling drugs may justify the judge's description of him as a "pusher," but it did not make him accountable for others engaged in the same act, any more than he would be accountable for all thieves if he had been convicted of larceny. Reputation may be established by the company one keeps, but the individual cannot be punished for the misdeeds of others. See United States v Rao, 296 F Supp 1145, 1148–49 (SD NY) (1969).

For the reasons noted, we agree with the Court of Military Review that the sentence imposed upon the accused was more severe than that which might have otherwise been imposed had the judge not been concerned with other "pushers." The record makes clear that the added severity was as to the period of confinement. See United States v Brennan, 10 USCMA 109, 27 CMR 183 (1959). Reassessment of the sentence can purge the effect of improper consideration of an aggravating circumstance which affects the period of confinement. United States v Brennan, supra. Consequently, while the Court of Military Review mistook the import of the error in this aspect of the sentence, it could prop-erly undertake, as it did, to purge the error by reassessment.

We turn now to the charge that in his questioning of the accused the trial judge demonstrated prejudice against him. In its opinion, the Court of Military Review quoted one exchange, which it described as "partisan interrogation of the accused." That examination is as follows:

"EXAMINATION BY THE COURT
"Questions by the military judge:

"Q. Corporal Hill, you used the word 'addicts' ill-advisedly. You don't mean addicts. Addicts and users to you are the same thing, is that correct?
"A. This is what I thought he was hitting onto.

"Q. Is it your testimony then that on this base you only know and had dealings with ten or twelve people who were either users or addicts?
"A. He said that I knew personally—yes. Yes, sir.

"Q. Do you know any other pushers aboard the base?
"A. No more than the guys who are in the brig for similar charges.

"Q. But you don't know whether they actually pushed or not?
"A. No, I don't

"Q. Do you know some people who may say they pushed?
"A. People over there have charges for selling, but whether they actually sold it or not, I don't actually know.

"Q. How many contacts did you have in Washington, D. C., for obtaining this heroin?
"A. Sir, it's not like an actual contact in D. C. I mean you can go to just about any corner. It's just like a supermarket. Narcotics in D. C. is just as plentiful as getting an apple. So it wasn't anything like a specific place you went to. Just about any corner in D. C.

"Q. Are you telling me you'd buy this from strangers or from people you know up there?

207

"A. Well, it's not actually strangers. Probably somebody told you this person here has something and that's the way it went.

"Q. How many different sources do you know in Washington, D. C., for heroin?

"A. Do I know?

"Q. Yes.

"A. I say, sir, just about any corner in D. C.

"MJ: You may resume your seat over here."

Several readings of the quoted examination leave us unconvinced that it manifests a predisposition on the part of the judge to deal with the accused more severely than justified by the evidence. The first part of the questioning falls within the area we earlier assumed for the purposes of this appeal to be impermissible inquiry into the accused's knowledge of other heroin transactions, but it does not remotely suggest a predetermined intention to adjudge a severe sentence. The second part of the examination elaborates upon a matter mentioned by the accused in his direct testimony. The accused had testified that "a lot of guys" had come to him to obtain other narcotics because of his "living in DC at the time." It was, therefore, entirely appropriate for the judge to inquire into the accused's "contacts" for obtaining narcotics in the District of Columbia. To us this part of the inquiry cannot reasonably be construed as evidence of the judge's predisposition to subject the accused to unfair or especially harsh punishment. Similarly, we are unable to perceive in other actions and rulings by the judge any fair indication that he abandoned the impartiality demanded of him by law.

As we read the record, the judge set out his reasons for imposing the sentence he did. Those reasons include the fact that the judge did not believe the accused was the kindhearted, ingenuous and concerned Marine that he represented himself to be, but rather that the accused was a pusher of narcotics for "profit," albeit, in the words of civilian defense counsel on direct examination, "not a big profit." Admissible evidence amply supports each of the reasons listed by the judge. We conclude, therefore, that this case is not like Lynch, supra, and that the Court of Military Review could properly reassess the sentence, as it did, to purge the influence of the inadmissible evidence of other misconduct.

The decision of the United States Navy Court of Military Review is affirmed.

Chief Judge DARDEN concurs.

Judge DUNCAN concurs in the result.