UNITED STATES

v.

Private (E–1) David A. BETHEA, 090–44–9300, U. S. Army, Company C, 3d Battalion, 33d Armor, 1st Brigade, 3d Armored Division, APO New York 09045.

SPCM 11298.

U. S. Army Court of Military Review.

Sentence Adjudged 31 Jan. 1975.

Decided 24 May 1976.

Appellate Counsel for the Accused: CPT Frank R. Newett, JAGC; CPT John R. Osgood, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Keith H. Jung, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

DeFORD, Judge:

The appellant, contrary to his pleas, was tried and convicted by a military judge, sitting as a special court-martial, of multiple charges of failure to repair; willful disobedience of lawful orders of superior commissioned officers; and willful disobedience of lawful orders of noncommissioned officers in violation of Articles 86, 90, and 91, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 886, 890 and 891) and received the approved sentence set forth above.

Appellant through counsel alleges as error, among others, that Specifications 1 and 2 of Charge II, Specification 5 of Charge III, and Additional Charge II were not properly chargeable as violations of Articles 90 and 91, UCMJ, as they constituted merely orders to perform duties appellant was already required to perform by reason of his status as a soldier. In addition, appellant alleges that Specifications 1 and 2, Charge II, had no legal efficacy beyond the charge of disobedience of the order of Staff Sergeant Smitherman as set forth in Specification 5, Charge III.

The charges and specifications in issue are as follows:

"Charge II: Violation of the Uniform Code of Military Justice, Article 90

Specification 1: In that Private E-1 David A. Bethea, U. S. Army, Company C, 3d Battalion, 33d Armor, having received a lawful command from Captain John C. Burch, his superior commissioned officer, to go to the Company C motor pool and remain there until he was released by proper authority, did, at Ayers Kaserne, Kirch Goens, Federal Republic of Germany, on or about 0815 hours, 25 November 1974, willfully disobey the same.

Specification 2: In that Private E-1 David A. Bethea, U. S. Army, Company C, 3d Battalion, 33d Armor, having received a lawful command from Second Lieutenant Kevin T. Murphy, his superior commissioned officer, to get out of bed, did, at Ayers Kaserne, Kirch Goens, Federal Republic of Germany, on or about 25 November 1974, willfully disobey the same.

Charge III: Violation of the Uniform Code of Military Justice, Article 91

Specification 4: In that Private E-1 David A. Bethea, U. S. Army, Company C, 3d Battalion, 33d Armor, having received a lawful order from Staff Sergeant James D. Smitherman, his superior noncommissioned officer, to get out of bed, did, at Ayers Kaserne, Kirch Goens, Federal Republic of Germany, on or about 0600 hours, 26 November 1974, willfully disobey the same.

Specification 5: In that Private E-1 David A. Bethea, U. S. Army, Company C, 3d Battalion, 33d Armor, having received a lawful order from Staff Sergeant James D. Smitherman, his superior noncommissioned officer, to get out of bed and clean up his area, did, at Ayers Kaserne, Kirch Goens, Federal Republic of Germany, on or about 0630 hours, 25 November 1974, willfully disobey the same.

Additional Charge II: Violation of the Uniform Code of Military Justice, Article 90

Specification: In that Private E-1 David A. Bethea, U. S. Army, Company C, 3d Battalion, 33d Armor, having received a lawful command from Lieutenant Colonel Jack T. Clark, his superior commissioned officer, to get out of bed, get dressed and go to daily training, did, at Ayers Kaserne, Kirch Goens, Federal Republic of Germany, on or about 0900 hours, 6 December 1974, willfully disobey the same."

The appellant was initially awakened on the morning of 25 November 1974 by Staff Sergeant Smitherman and told to get out of bed and clean up his area. The appellant refused and remained in bed. At or about

0740 on the same morning, and after the appellant's initial conduct had been reported to his platoon leader, Lieutenant Murphy, that officer went to the appellant's room and gave him a second order to get out of bed. The appellant again refused to comply with this second order. Subsequently at 0745 on the same day, the appellant failed to repair to work formation. Finally, at 0815 of the same day, his company commander went to the appellant's room and gave him an order to go to the unit motor pool and remain there until released by proper authority. At the time the appellant received the order of his company commander, he was still in bed.

The following day the appellant was again awakened by Staff Sergeant Smitherman on or about 0630 that morning. Sergeant Smitherman testified that he found the appellant in bed. He then shook him and said, "Would you mind getting up and cleaning up your area." The appellant just looked at him and refused to get up. Staff Sergeant Smitherman left the area.

Subsequently at 0900 on 6 December 1975, the appellant's battalion commander, after being advised of the appellant's previous behavior, went to the appellant's room in company with appellant's company commander and found the appellant in bed. The battalion commander then gave the appellant an order to "get out of bed, get dressed and go to daily training." The appellant refused to comply with the order.

The major thrust of appellant's argument is based upon the case of *United States v. Bratcher*[1] as well as paragraphs 26*b* and 169*b* of the Manual.[2]

In *Bratcher*, the United States Court of Military Appeals considered a case in which a soldier who was a conscientious objector was given an order by his company commander, a commissioned officer, to perform duties as a duty soldier.

The court stated that the willful disobedience contemplated is such as shows intentional defiance of authority as when an enlisted person is given a lawful command by an officer to do or cease doing a particular thing at once and refuses or deliberately omits to do what is ordered. The order in issue did not contemplate performance or non-performance of some special function but was rather an order to perform military obligations with which he already had responsibility to perform by reason of his status as a soldier. Accordingly, the court held the order unenforceable under Article 90, UCMJ.

Subsequent cases have applied the *Bratcher* doctrine to orders to train;[3] to resume training.[4]

Paragraph 26*b* of the *Manual* provides in part, " . . . If a person willfully disobeys an order to do a certain thing, and persists in his disobedience when the same order is given by the same or other superior, a multiplication of charges of disobedience should be avoided . . . There are times, however, when sufficient doubt as to the facts or the law exists to warrant making one transaction the basis for charging two or more offenses. . . . "[5]

Paragraph 169*b* of the *Manual, supra*, explains Article 90, UCMJ, and provides in part, that non-performance by a subordinate of any mere routine duty may be a violation of Article 92 or Article 134.

The evidence of record clearly reflects that the orders given the appellant on the mornings of 25 and 26 November and 6 December 1974 were not designed to cause the appellant to be subjected to increased

1. *United States v. Bratcher*, 18 U.S.C.M.A. 125, 39 C.M.R. 125 (1969).

2. Paragraphs 26*b* and 169*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

3. *United States v. Lee*, 44 C.M.R. 417 (A.C.M.R. 1971); *United States v. Oldaker*, 41 C.M.R. 497 (A.C.M.R.1969).

4. *United States v. Blackburn*, 42 C.M.R. 401 (A.C.M.R.1970); *United States v. Wohletz*, 41 C.M.R. 728 (A.C.M.R.1970).

5. *See also United States v. Middleton*, 12 U.S. C.M.A. 54, 30 C.M.R. 54 (1960); *United States v. White*, 40 C.M.R. 686 (A.B.R.1969); *United States v. Posnick*, 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957).

punishment, but were intended by his unit officers and NCO's to motivate the appellant to willingly perform.

■ We find nothing improper in alleging and proving the orders of the sergeant, platoon leader and company commander. However, these offenses all merged for punishment purposes.[6]

The maximum punishment which could be imposed for the three offenses occurring on 25 November 1974 charging violation of Articles 90 and 91 was that punishment authorized for the greater offense.[7]

■ With regard to the specification charging willful disobedience of the order of Staff Sergeant Smitherman to get out of bed on the morning of 26 November 1974, we are not convinced beyond a reasonable doubt that Staff Sergeant Smitherman gave a specifically discernable order. Accordingly, appellant's conviction of this specification cannot stand. We will cure this error in our decretal paragraph.

Appellant further alleges that Additional Charge II should be dismissed.

In the specification in question, the appellant was ordered by his battalion commander to get out of bed, get dressed and go to daily training.

■ The order given the appellant required three specific acts in sequence: (1) get out of bed; (2) get dressed; and (3) report to training. As we have heretofore noted, the portion of the order ordering the appellant to go to training is unenforceable as a violation of Article 90, UCMJ.[8] However, the first two requirements were of such a character to require the appellant's immediate compliance. The appellant failed to respond.

As we said earlier, the *Manual* provides that the willful disobedience contemplated by Article 90 is such as shows an intentional

defiance of authority, as when an enlisted person is given a lawful command by an officer to do a particular thing at once and refuses or deliberately omits to do what is ordered.

Here, the first two requirements of the order were lawful and required the appellant's immediate response. The order related to a specific military duty or requirement and under the circumstances of this case was an order which the battalion commander was authorized to give to the appellant.

We next turn to the issue of inadmissible punishments under Article 15, UCMJ.

Counsel for appellant urges that Appellate Exhibits VIII, IX, and X were improperly admitted into evidence in aggravation during the sentencing portion of the trial.

Appellate Exhibits VIII and IX are both Article 15 punishments imposed upon the appellant which he subsequently appealed. However, the action on the appeals was not included in the exhibits. These exhibits are clearly incomplete on their face.

Appellate Exhibit X reflects an Article 15 punishment imposed upon the appellant which counsel claim fails to show the acknowledgments by the appellant.

The questioned appellate exhibits were admitted without objection at the trial proceedings.

The *Manual*[9] authorizes a court-martial to consider personnel records of the accused reflecting his "past conduct and performance" in connection with the sentence.

Nonjudicial punishments under Article 15, UCMJ, are included under this grant of authority.[10] This same provision of the *Manual* further provides that if the accused objects to the data as being inaccurate or incomplete in a specified material particu-

---

**6.** *See also United States v. Simpson*, 42 C.M.R. 683 (A.C.M.R.1970); *United States v. White, supra; United States v. Bivins*, 34 C.M.R. 527 (A.B.R.1964).

**7.** *See* paragraph 76a (5), *Manual, supra.*

**8.** *United States v. Oldaker, supra.*

**9.** Paragraph 75d, Manual for Courts-Martial, United States, 1969 (Revised edition).

**10.** *United States v. Johnson*, 19 U.S.C.M.A. 464, 42 C.M.R. 66 (1970).

lar, or as containing specified objectionable matter, the military judge shall determine the matter. Otherwise, it is waived.

Normally, there would be little question that these matters were waived. However, the United States Court of Military Appeals has held that absent circumstances indicating an affirmative waiver by the defense counsel of appropriate judicial action required by the evidence, the trial judge was not relieved of his independent duty to take such action.[11]

Subsequently that court decided two additional cases[12] using the same rationale. In *Morales, supra,* the court considered a DA Form 20B and three nonjudicial punishments which were improperly admitted into evidence[13] and applied the rule enunciated in *Graves, supra.* We note that the court in *Morales* relied upon the determination of this Court that the appellant in that case was prejudiced by the improper admissions.

Here, we believe the appellant suffered no prejudice by the admissions of Appellate Exhibits VIII and IX as evidence in aggravation of punishment for the reasons we hereafter set forth.

Appellate Exhibit X is a copy of the Article 15 punishment which was imposed on manifold Form DA 26–27 dated 1 Nov. 73. The copy admitted in evidence as Appellate Exhibit X is a photostat of a carbon from the manifold set, it appears the acknowledgments were made but do not clearly show on the photostat. In addition, Part II of the form was obviously signed and dated, however, the signature and the date were shown approximately three-fourths of an inch below the blocks where the signature and date should be made. It would appear that the underlying copy "slipped" when the original was signed and

dated. We are convinced that the form was properly acknowledged and its admission into evidence was proper.

The appellant next urges that the military judge committed error by not giving the appellant individualized consideration on sentencing.

The military judge stated during the sentencing procedure:

" . . . We are applying uniquely enough, military law and it has a purpose in addition to the general purposes of ordinary law. In this court's opinion, like ordinary law, it seeks to keep the order, of course, of [sic] in the community. But unlike ordinary law, in distinction, and I think it is critical, it is intended in addition to enforce military discipline. Military justice in the opinion of this court is indeed to justice as military music is to music. And I should like the record to reflect that it is so in this connection not vacant, but in a very functional and deliberate way. This court is not ignorant of that fact and will impose sentence accordingly."

It has been held that an accused must be given individualized consideration in sentencing. A sentence may not be predicated upon factors of aggravation unsupported by testimony and which operates as a "one-way street against the accused. They have an overtone of severity against him which he cannot possibly rebut by any reasonable means."[14]

In addition, general deterrence has been held to be an improper element when considered as a factor in determining an appropriate sentence as it disregards the basic concept in sentencing that punishment not only fit the crime, but be responsive to the character, the background, and potential

---

11. *United States v. Graves,* 1 M.J. 50 (1975). In *Graves,* the court considered failure of trial defense counsel to request an instruction on voluntariness and to object to the judge's instructions.

12. *United States v. Morales,* 1 M.J. 87 (1975); *United States v. Heflin,* 1 M.J. 131 (1975).

13. *See United States v. Morales,* 49 C.M.R. 458, 461 (A.C.M.R.1974) for a description of the documents which were determined to be inadmissible.

14. *United States v. Mamaluy,* 10 U.S.C.M.A. 102, 27 C.M.R. 176, 181 (1959).

for rehabilitation of the particular accused.[15]

Here we cannot ascertain with any degree of certainty, what the military judge intended to convey as the reasons for his sentence. It may be that he considered general deterrence as a factor when determining an appropriate sentence. In any case, we will resolve our doubts in favor of the appellant on this issue and reassess the sentence.

Finally, we must determine whether the appellant was prejudiced during the sentencing portion of the trial by the offenses of which he was found guilty but which were multiplicious and merged for sentence purposes as well as the two nonjudicial punishments which were improperly admitted into evidence.

Here, the appellant received the maximum sentence imposable within the limited jurisdiction of a special court-martial for offenses the punishment of which far exceeded the court's jurisdiction.

■ Military judges normally may be presumed to know the law and apply it properly in the absence of a clear showing to the contrary.[16] There has been no indication from the record that the military judge did not consider multiplicity when imposing his sentence. Accordingly, we find no error as we have no reason to believe that the military judge did not properly consider the three "orders" offenses as having merged for sentence purposes.

■ As we have heretofore noted, the admission of the two Article 15 punishments in evidence in aggravation of punishment was error. However, we do not believe the appellant was prejudiced in view of the court's sentence, the offenses which the appellant had been properly convicted, the other evidence properly before the court in aggravation of punishment. This view is further reenforced by the fact that the military judge can normally be presumed to

ascertain good evidence from that which is improper and inadmissible.

The other assignments of error have been considered and are deemed to be without merit.

■ The finding of guilty of Charge III, Specification 4 is set aside and the specification is dismissed. Only so much of Additional Charge II is approved as finds that the appellant, at the date, time and place alleged, having received a lawful command from Lieutenant Colonel Jack T. Clark, his superior commissioned officer, to get out of bed and get dressed did willfully disobey the same. The findings of guilty as modified herein are affirmed. Reassessing the sentence on the basis of the above-indicated errors and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $225.00 pay per month for four months.

Senior Judge BAILEY and Judge COOK concur.

---

**15.** *United States v. Mosely*, 1 M.J. 350 (1976); *United States v. Hill*, 21 U.S.C.M.A. 203, 44 C.M.R. 257 (1972).

**16.** *United States v. Montgomery*, 20 U.S.C.M.A. 35, 42 C.M.R. 227 (1970).