UNITED STATES, Appellee,

v.

Louis V. VARACALLE, Staff Sergeant,
U. S. Army, Appellant.

No. 31,888.
CM 434052.

U. S. Court of Military Appeals.

Jan. 30, 1978.

*Captain D. David Hostler,* argued the
cause for Appellant, Accused. With.him on
the brief were *Colonel Alton H. Harvey,
Lieutenant Colonel John R. Thornock,* and
*Major Richard J. Goodard.*

Captain John F. DePue, argued the cause
for Appellee, United States. With him on
the brief were *Lieutenant Colonel Donald
W. Hansen* and *Major John T. Sherwood,
Jr.*

Opinion

FLETCHER, Chief Judge:

The appellant was convicted of sod-
omy with a child under 16 years of age,
lewd and lascivious acts, solicitation of sod-
omy, indecent liberties with children under
16 years of age, and assault and battery on
a child under 16 years of age in violation of
Articles 125, 134 and 128, respectively, Uni-
form Code of Military Justice, 10 U.S.C.
§§ 925, 934, and 928. He was sentenced by
the military judge to a bad-conduct dis-
charge, confinement at hard labor for 4
years and 3 months, forfeiture of all pay
and allowances, and reduction to the lowest
enlisted grade. Both the convening author-

ity and the United States Army Court of Military Review approved the findings and sentence. We granted review to determine whether the appellant was prejudiced when the military judge considered the deterrence of others as a factor in imposing sentence. Examination of the record and the applicable legal standards leads to the conclusion that the trial judge acted properly in his sentencing deliberations.[1]

We have been criticized[2] for establishing a new rule in *United States v. Mosely,* 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976),[3] which resulted in the discarding of the time-honored concept for proper sentencing common in both military and civilian jurisprudence of utilization of the factor of general deterrence in sentence deliberations.[4] An unfortunate result of our desire to insure strict compliance with the worthy goal of "individualized sentencing" developed in *United States v. Mamaluy,* 10 U.S. C.M.A. 102, 27 C.M.R. 176 (1959), has been an improper restriction on the sentencing authorities from properly performing their function.[5]

Numerous reasons or philosophies have been advanced for the imposition of punishment.[6] Despite the variety of methods of

1. In the instant case, the prosecutor, in reliance upon our decisions in *United States v. Mosely,* 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976), and *United States v. Miller,* 24 U.S.C. M.A. 181, 51 C.M.R. 400, 1 M.J. 357 (1976), specifically argued that the court should not consider deterrence of others in determining an appropriate sentence. The trial judge, after announcing his sentence, related to the appellant the numerous factors and matters he had relied upon in determining what he felt was an appropriate sentence for appellant's acts. Although this case, therefore, is not directly concerned with improper prosecutorial argument, the question of the validity of general deterrence as a sentencing factor is before us, and the viability and the scope of the *Mosely* concept must be properly scrutinized.

2. I have carefully examined the position expressed in *Mosely,* and I conclude that, though it is sound in the narrow sense of its facts, its broad ramifications are untenable in the military justice system. As I was one of the concurring judges in that opinion, I now feel obliged to set forth my position separately. I share Judge Cook's view that the military justice system requires that each defendant receive individualized sentencing; however, I do not regard the rejection of either all consideration of the concept of general deterrence by the sentencing authority or its espousal in a reasonable and professional manner by the prosecuting attorney as either necessary or desired in attaining that goal. My examination of this record convinces me that this appellant received a sentence that was "individualized," that is, predicated on factors relevant to him, and hence, there was no error. To the extent, therefore, that *Mosely* involves anything more than a condemnation of overzealous argument by a prosecuting attorney as denounced in our other decisions (*See e. g., United States v. Nelson,* 24 U.S.C.M.A. 49, 51 C.M.R. 143, 1 M.J. 235 (1975); *United States v. Knickerbocker,* 25 U.S.C.M.A. 346, 349, 54 C.M.R. 1072, 1075, 2 M.J. 128, 130 (1977) (Fletcher, C. J., concurring in the result)), I view it now as incorrect.

3. *See United States v. Lucas,* CM 434131, 2 M.J. 834 (A.C.M.R.1976); *United States v. Davic,* ACMS 24354, 1 M.J. 865 (A.F.C.M.R.1976).

4. The concept is clearly well established in the civilian system; further, treatises and commentaries on military justice for over 100 years have recognized that one valid need or object of punishment was to deter others from similar acts. *See* Dudley, *Military Law and the Procedure of Courts-Martial,* 155 (1907); O'Brien, *A Treatise on American Military Law and the Practice of Courts-Martial,* 270 (1846); Winthrop, *Military Law and Precedents,* 397 (2d ed. 1925); Moyer, *Justice and the Military,* § 2–661 (1972).

The deterrence of others was often considered hand-in-hand with the necessary and specialized goal of the military society of maintaining military discipline. Obviously, the manner in which the argument is delivered, the matters referred to, and the concepts expressed may make the given argument or sentencing process improper. *See* Moyer, *supra;* Morrison, *The Role of Trial Counsel in Sentencing Proceedings,* 13 A.F.JAG L.Rev. 30 (1971). Yet, this cannot be said to undercut the validity of general deterrence as a sentencing factor or establish a specialized military society reason which denounces its use. (*See* note 2, *supra.*)

5. Indeed, I seriously question whether the sentencing authority could ever actually sever such a consideration from his deliberations.

6. Mr. Justice Black, in writing for a unanimous Court in *Williams v. New York,* 337 U.S. 241, 248 n.13, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), after a discussion of the modern philosophy of penology of having the punishment fit the offender, and not merely the crime, noted with approval the following formulation by Judge Ulman of the purposes of punishment found in Glueck, *Probation and Criminal Justice,* 113 (1933):

expressing these societal needs,[7] general deterrence is virtually universally accepted.[8] There are three reasons for prescribing punishment for those acts declared to be criminal by society. These are the protection of society, the rehabilitation of the offender, and example. The concepts of deterrence and example are not synonymous; instead deterrence comes about because of example. It should be evident that any criminal statute whose violation provides for punishment in any form is enacted with a purpose of making an example of the violator. A deterrence not only to the accused, but to all who are cognizant of the commission of the crime and of the punishment ordered, is the logical consequence of the imposition of a sentence. The punishment serves as notice that the society will not condone the act in question.

An accused properly sentenced is not being made example of for crimes committed by others. The sentence and the resultant punishment are individualized to the particular accused, but will vary as to the crime and the mores of that society at any certain time. Any sentencing authority, to be significant, must correlate its sentence with the present acceptance or nonacceptance of the given act. It must act as the community conscience within the prescribed limits at that point in time. To do otherwise, where

a maximum and minimum sentence are set forth, vitiates society's mandate to that authority to individually prescribe a punishment to meet the needs of that particular offender, and to protect society from future violations of that sort.

■ A sentencing authority would be remiss in imposing punishment if it did not consider both the effect it will have on the individual accused, and on the community, for society is protected through a proper sentencing process not only in an immediate sense from the criminal in the dock, but in a greater sense through the announcement that at this time and place, the given crime will be punished. This is general deterrence which is a valid and necessary facet of appropriate sentencing. To conclude that sentence authorities do not, or should not, do what this trial judge verbalized is a fiction, and ignores what is inherent in the decision-making process whereby the appropriate sentence is determined.

■ There is a critical distinction between an enlargement of a sentence for the purpose of general deterrence only without consideration for the particular accused, and the sentencing authority saying as to this individual with all the matters peculiar to him, we make an example of him and all others like him so disposed.[9] The latter is

---

1st. The protection of society against wrong-doers.
2nd. The punishment—or much better—the discipline of the wrong-doer.
3rd. The reformation and rehabilitation of the wrong-doer.
4th. The deterrence of others from the commission of like offenses.
    It should be obvious that a proper dealing with these factors involves a study of each case upon an individual basis.

7. The ABA Standards Relating to Appellate Review of Sentences (Approved Draft 1968) at page 126, provides the following ethical bases for the state's punitive intrusion upon personal liberty: (1) retributive, (2) general deterrence, (3) specific deterrence, (4) preventive, and (5) rehabilitative. *See also* Coffee, *The Future of Sentencing Reform,* 73 Mich.L.Rev. 1361 (1975); Bailey and Smith, *Punishment: Its Severity and Certainty,* 63 J.Cr.L. & Criminology, 530 (1972).

8. *See also United States v. Braun,* 382 F.Supp. 214 (S.D.N.Y.1974).

9. As the court in *United States v. Foss,* 501 F.2d 522 (1st Cir. 1974), correctly noted a sentencing authority/court's duty to "individualize" the sentence simply means that, whatever that authority's thoughts as to the deterrent value of a given sentence may be, he must in each case reexamine and measure that view against all the relevant facts and remaining sentencing goals. Once he has done so, he must then decide what factors, or mix of factors, will "carry the day"; and while his conclusions as to deterrence may never be so unbending as to forbid relaxation in the appropriate case, these may nonetheless justify the punishment if the situation so dictates.
    Nothing in either *United States v. Mamaluy, supra,* or *United States v. Hill,* 21 U.S.C.M.A. 203, 44 C.M.R. 257 (1972), dictates an opposite result. Both of these cases stress the need for clear guidance to the sentencing authority to render an individualized sentence, yet neither

necessary and proper to meet the needs of society, and to comply with the goal of individualized sentencing.

The decision of the United States Army Court of Military Review is affirmed.

PERRY, Judge (concurring in the result):

I agree with the conclusion reached in the principal opinion that the comment made by the trial judge after announcing the sentence in this case warrants no action by us. I, therefore, join with the Chief Judge in affirming the decision of the United States Army Court of Military Review. However, I write separately to set forth the following reasons for my view concerning the issue on review.

## I

The record before us indicates that, pursuant to a pretrial agreement, the appellant pleaded guilty before a military judge, sitting alone, to the following offenses with a female child under the age of 16: two charges of sodomy; assault and battery; a lewd and lascivious act; solicitation of sodomy; and indecent liberties in violation of Articles 125, 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 928, and 934, respectively.[1] Upon conviction of all offenses to which he pleaded guilty, the appellant could have received a sentence in the aggregate of 54 years' imprisonment and a dishonorable discharge, absent the pretrial agreement, which provided, *inter alia,* that the appellant's sentence would include 7 years' imprisonment and a dishonorable discharge. The record displays a painstaking inquiry by the judge into the appellant's involvement in the offenses to

which he had pleaded guilty as well as presentation of matters in mitigation by the appellant, including favorable evidence concerning the appellant's military record. During the arguments concerning sentence, the prosecutor carefully adhered to this Court's decision in *United States v. Mosely,* 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976), and *United States v. Miller,* 24 U.S.C.M.A. 181, 51 C.M.R. 400, 1 M.J. 357 (1976), and indeed urged the Court not to consider deterrence of others in determining an appropriate sentence. After considering all relevant matters pertaining to sentencing, the judge proceeded to sentence the appellant to a bad-conduct discharge, confinement at hard labor for 4 years and 3 months, total forfeitures, and reduction in rank to the grade of Private E–1. Following the announcement of the sentence, the judge then made the following statement:

Now, Sergeant Varacalle, I want to assure you that I gave very weighty consideration to the evidence concerning your many years of outstanding faithful service to your country and to the military. I also, of course, considered all the arguments by counsel for both sides. Now, Sergeant Varacalle, based on the evidence before me, I do believe that you are suffering from some emotional and mental handicaps. Apparently you are somewhat emotionally immature. In normal terms you don't have a well-developed conscience, and apparently you're sexually attracted by—to children. Based on what I've seen, I'm not convinced that there's any strong, almost overriding compulsion on your part to give in to that attraction you apparently feel toward

---

prohibits reliance upon the concept of general deterrence. Instead, they prohibit punishment of an accused for the acts of others, rather than for his own illegalities or misconduct. Therefore, these cases are not in conflict with the position expressed in this opinion.

1. The gravity of these charges can readily be seen when the appellant's stipulation of fact is read. On January 4, 1975, the appellant required a 7-year-old girl, who had been entrusted to his care, to perform fellatio upon him. On that same date, he also attempted, but failed to consummate a rectal as well as vagi-

nal intercourse upon her person. He also displayed to her a picture of a woman engaged in an act of fellatio. On February 15, 1975, when the same child was again entrusted to his care, she was made to engage in similar acts of sodomy. He also again attempted to penetrate her rectum and her vagina but was unsuccessful. The appellant admitted that in January 1974 and on June 15, 1974, he fondled the body of another thirteen year old girl. Finally, the appellant acknowledged that he attempted to induce his fifteen year old babysitter to permit him to perform cunnilingus on her.

children. In essence, that makes your acts all the more not only reprehensible, but lessens the danger you impose [sic] to society. Now, perhaps I'm oversimplifying the situation, but it seems to me that your sexual attraction to children is not normal, but on the other hand, it doesn't have to govern your life. I'm sure it's a very difficult problem to live with, and whether or not you'll ever mature in the sense that you won't have that attraction, I don't know. But, that certainly does not mean you have to act in accordance with your desires. Now, counsel argued that I shouldn't think of the deterrence of others. Very frankly I did, because I am convinced there are probably a good many people who are sexually attracted by children and tempted to engage in acts similar to yours, and I hope the sentence in this case will have some tendency to help them resist the temptation. I would certainly hope that what has happened to you today and during the past few months will result in your never giving in to your temptations along the lines of engaging in sexual activities with children again. You probably will be—undoubtedly will be—sent to Fort Leavenworth, Kansas, and there are, to my understanding, psychiatrists and psychologists available there to help you, and I hope you have the good sense to take full advantage of the assistance that will be offered to you there. And, as you stated in your statement through counsel, you will never, never, ever engage in this sort of conduct in the future.

The foregoing comments of the judge led to the grant of review in this case. The appellant contends that this Court's opinion in *United States v. Mosely, supra,* and its progeny, rendered the entire sentencing process void, thus requiring reversal as to the sentence. In his dissent, Judge Cook expresses agreement with that argument and reminds us that *Mosely* reviewed the special emphasis military law places upon the individualization of the sentence. He adds that *Mosely* concluded that it was "improper to adjudge a more severe sentence than might otherwise be imposed because of

a purpose to deter others in the general population."

## II

In my view, the trial judge conscientiously applied all relevant criteria and gave weighty consideration thereto in arriving at the sentence he finally imposed. During the presentence proceedings, considerable effort was expended in determining whether the mother of one of the victims should be allowed to testify on the question of aggravation. Having determined the irrelevancy of the proffered testimony, the judge finally denied the prosecution's request that she testify. The judge considered the testimony of the appellant's former commanding officer, Colonel Sherman, who testified that during the time he served with the appellant from January 1973 to July 1974, he found the appellant to be a good worker, a very good supervisor, and dedicated to his job. He stated, "I classed him as a go-getter and I have no complaints about his work at all. I thought he did a very good job." He also testified, "In today's vernacular, Sergeant Varacalle would be considered very sharp. I have never seen him in a poor uniform. His shoes and boots were always shined and I felt he always kept himself in a high state of military bearing." Additionally, he stated, "I would say Sergeant Varacalle was extremely loyal and very obedient." The judge also considered the testimony of three other officers with whom the appellant served. All of these officers testified concerning the appellant's good character and his record of outstanding military service. The appellant's counsel made a statement on his behalf and called to the attention of the judge the appellant's DA Form 20 which included two good conduct medals and the Vietnamese Campaign Medal. The judge not only considered a statement of a psychiatrist who had examined the appellant, but also satisfied himself concerning the meaning of certain words contained in the report, including "pedophilia," which the parties finally agreed meant having a sexual attraction for children. During his

sentencing argument, the defense attorney emphasized the appellant's excellent military service. After the arguments were concluded, the judge sought the assistance of the attorneys in clarifying some pencil notations on prosecution exhibit 2 indicating that the appellant may have been wounded in the right leg in 1967 and in the right hand in 1970. There was no mention in the exhibit of the appellant's having received a Purple Heart, but the judge satisfied himself that the wounds were received in battle in both instances.

Throughout the record of trial there is abundant evidence that the judge gave careful, individualized attention to the formulation of an appropriate sentence. I am convinced that the sentence he finally announced was the product of individualization. In that regard, it is noted that the sentence which the judge finally imposed was considerably less than the maximum imposable sentence for the offenses to which the appellant pleaded guilty, namely imprisonment for 54 years and a dishonorable discharge. It was also considerably less than the sentence which the appellant would have received under the pretrial agreement to which he had committed himself. The dissent does not suggest what would have been a proper sentence in this case. Instead, the sentence is condemned on the "special emphasis military law places upon the individualization of sentence," which *Mosely* is said to express, and for the further reason that the judge admittedly took into consideration the possible deterrent effect which the sentence might have upon others.[2]

But the concept of individualization only means that in formulating a sentence the judge must utilize sentencing discretion. *Dorszynski v. United States,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974). In order to do this the judge should refrain

from imposing "[s]entences dictated by a 'mechanistic' concept of what a particular type of crime invariably deserves." *United States v. Foss,* 501 F.2d 522, 527 (1st Cir. 1974). The Court in *Foss* (at page 527) expounded upon this view as follows:

[A] judge holding such fixed ideas is presumably closed to individual mitigating factors . . . [C]ourts have vacated sentences reflecting a preconceived policy always to impose the maximum for a certain crime. *United States v. Hartford,* 489 F.2d 652 (5th Cir. 1974); *United States v. Daniels,* 446 F.2d 967 (6th Cir. 1971); *United States v. McCoy,* 139 U.S. App.D.C. 60, 429 F.2d 739 (1970). A rigid policy involving even less than the maximum may be objectionable; any kind of mechanical sentencing that steadfastly ignores individual differences is to be avoided. *Cf. United States v. Baker,* 487 F.2d 360 (2d Cir. 1973); *Woolsey v. United States,* 478 F.2d 139 (8th Cir. en banc 1973) . . .

   \*    \*    \*    \*    \*    \*

[I]n *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), [the Supreme Court said:]

"[T]he punishment should fit the offender and not merely the crime. . . The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender."

*See also Williams v. Oklahoma,* 358 U.S. 576, 585, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959).

My review of the record reveals no evidence that the judge imposed a greater sentence than he would otherwise have imposed absent consideration of the concept of deterrence. The dissent mentions no such evidence. *Mosely* recognizes the importance of deterrence as a "function of the

---

2. The concept that the "punishment should fit the offender has never yet been held to eliminate general deterrence as a factor to be considered along with others. See M. Frankel, Criminal Sentences; Law Without Order, 106 (1972). This is so even though general deterrence concerns itself not with the individual

offender but with the sentence's impact on others." *United States v. Foss,* 501 F.2d 522, 527 (1st Cir.1974). See also *United States v. Davic,* ACMS 24354, 1 M.J. 865 (A.F.C.M.R.1976); and *United States v. Lucas,* CM 434131, 2 M.J. 834 (A.C.M.R.1976).

criminal justice system," but for the reasons stated therein, condemned the argument of the prosecutor at Mosely's trial.[3] The dissent illuminates paragraphs 75 and 76 of the Manual for Court-Martial, United States, 1969 (Revised edition), which I submit do not prohibit the action of the judge in this case. Nor is there any support in this Court's precedents for condemnation of the trial judge's approach to formulation of the sentence here. I do not find that the judge harbored any preconceived notions concerning the sentence. Nor did he approach the formulation of the sentence mechanistically.

I am convinced that the trial judge formulated a sentence after careful consideration of the past life and habits of the appellant. He gave consideration not only to the appellant's "many years of outstanding faithful service," but also to the evidence that the appellant was apparently "suffering from some emotional and mental handicaps . . ." The judge was "not convinced that there's any strong, almost overriding compulsion on your part to give in to that attraction you apparently feel toward children" and stated that in his view that lessened the danger which the appellant poses to society. If anything, that statement indicated that the judge gave a less severe sentence than he might otherwise have imposed.

I therefore vote to affirm the decision of the Court of Military Review.

COOK, Judge (dissenting):

In *United States v. Mosely*,[1] we reviewed the special emphasis military law places upon the individualization of sentence, and concluded that it was improper to adjudge a more severe sentence than might otherwise be imposed because of a purpose to deter others in the general population from committing the same offense, notwithstanding such practice is commonplace in the civilian courts. The decision has been strongly criticized in some commentaries and in decisions by Courts of Military Review, but I am still persuaded that it is justified, indeed required, by the authorities upon which we relied, and should not be overruled.

A point of differentiation between this case and *Mosely* posited in the separate opinions comprising the majority prompts me to further comment. The Chief Judge suggests, in footnote 2 of his opinion, that *Mosely* is still viable as "a condemnation of overzealous argument by a prosecuting attorney." Judge Perry stresses that *Mosely* dealt with a prosecutor's deterrence argument; the stress reasonably implies that he too may regard *Mosely* as having continued precedential value as a prohibition of argument by trial counsel for a sentence more severe than that otherwise just for the accused in order to deter others who might be inclined to commit the offense of which the accused was convicted. If consideration of deterrence is proper in fixing the sentence, but argument for such consideration is not, what about an instruction on deterrence by the trial judge to the court members; is such instruction allowable or forbidden? *See* paragraph 76*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

The logic of the propounded distinction escapes me. If the court members or the trial judge, as the case may be, can properly take into account the desire, or hope, to deter others, and, on the basis thereof, impose a more severe sentence than would be imposed without that circumstance, then why should trial counsel not be allowed to remind them they have the right to consider deterrence and to ask that they do so in determining a sentence for the accused? To me, the two situations—argument by trial counsel and the expectation by the sentencing authority that other persons will be deterred if the accused is subjected to a more severe sentence than otherwise justified by the sentence information—are conceptually inseparable. More importantly, both violate the same rules for sentencing prescribed by the President.

---

3. *United States v. Mosely*, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976).

1. 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976).

Article 36(a), Uniform Code of Military Justice, 10 U.S.C. § 836(a), confers authority upon the President to prescribe "procedure, including modes of proof, in cases before courts-martial." As adjudgment of sentence is an indispensable part of trial by court-martial,[2] the rules of sentence procedure provided by the President have the force of law. Consequently, what may be generally allowable in the federal civilian courts cannot be applied in a court-martial if contrary to a prescribed military rule.[3]

The military rules are prescribed in the Manual for Courts-Martial, United States, 1969 (Revised edition). As I read them, they mandate that every sentence factor that might militate against the accused must be a matter of evidence properly before the court-martial.

The first rule on sentencing is that "the prosecution and defense may present appropriate matter to aid the court in determining the kind and amount of punishment to be imposed." *Id.* at paragraph 75*a*.

Depending upon whether the accused has or has not entered a plea of guilty and whether there is a service regulation on the subject, trial counsel can present only four types of evidence as part of the Government's direct case on sentencing. In all cases, trial counsel must first read the data relating to the accused that appears on the front page of the charge sheet and, secondly, introduce evidence of any previous conviction. *Id.* at paragraph 75*b*(1), (2). Use of the third and fourth categories of evidence depends upon specified conditions and rests within the discretion of the Government. If the accused has entered a plea of guilty and "available and admissible evidence as to any aggravating circumstances

was not introduced before findings," trial counsel may introduce "that evidence" in the sentence proceedings. *Id.* at paragraph 75*b*(3). Finally, if allowed by service regulation and trial is by a court constituted with a military judge, "trial counsel may" introduce "personnel records of the accused . . . or summaries thereof," which comply with the rules of evidence. *Id.* at paragraph 75*d*.

With the exception of an unsworn statement by the accused and certain writings, matter in mitigation or extenuation presented by the defense must also satisfy the rules of evidence. The rules may be relaxed by the trial judge as to "affidavits, certificates of military and civil officers, and other writings of similar apparent authenticity and reliability." *Id.* at paragraph 75*c*(1).

Under the Manual, the general trial rule for argument by counsel is that no counsel may argue "any matter of fact as to which there has been no evidence." *Id.* at paragraph 72*b*. In my opinion, that rule applies equally to argument on sentence. The Manual further requires that, at a trial in a court-martial with members, the trial judge give "appropriate instructions on the punishment." *Id.* at paragraph 76*b*(1). The instructions "should be tailored to fit the facts and circumstance of the individual case." *Id.* Delineating the basis for sentence determination, the Manual observes that the court-martial shall act on "all the facts and circumstances involved in the case, regardless of the stage of the trial at which they were established"; it explicitly identifies the facts and circumstances mentioned in the delineation as the "evidence" in the case. *Id.* at paragraph 76*a*(2).

**2.** *United States v. Allen*, 8 U.S.C.M.A. 504, 507, 25 C.M.R. 8, 11 (1957).

**3.** Of course there are exceptions, such as a rule contrary to, or inconsistent with, the United States Constitution or a provision of the Uniform Code of Military Justice. *See United States v. Ware*, 24 U.S.C.M.A. 102, 104, 51 C.M.R. 275, 277, 1 M.J. 282, 284 (1976). Some commentary suggests other limitations may inhere in the provision of Article 36(a), UCMJ, that the rules prescribed by the President "shall,

so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts." *See* Fidell, *Judicial Review of Presidential Rulemaking Under Article 36: The Sleeping Giant Stirs*, 4 Mil.L.Rptr. 6049, 6054 (Oct.–Dec. 1976). I believe no exception or limitation exists as to the rules of the Manual for Courts-Martial, United States, 1969 (Revised edition), on sentencing discussed in the text.

Although the majority's recent holding in *United States v. Williams*, 3 M.J. 155 (C.M. A.1977), which prohibits judicial notice of a regulation alleged in a specification, may have cast doubt on the matter, I am willing to adhere to the early rule that a court-martial may be presumed to have taken notice of facts of common knowledge in the community. *United States v. Jones*, 2 U.S. C.M.A. 80, 87, 6 C.M.R. 80, 87 (1952); *see also United States v. McCrary*, 1 U.S.C.M.A. 1, 1 C.M.R. 1 (1951). I do not believe, however, that even this rule allows a court member to take notice that others may be deterred from committing the same offense as the accused if the punishment imposed upon him is increased beyond what would otherwise be adjudged on the basis of the evidence before the court. In my judgment, deterrence of others is an emotional expectation or a hoped-for result, but it is not an empirical fact capable of being judicially noticed. In any event, recourse to the concept to increase the sentence beyond what would otherwise have been adjudged on the basis of the evidence impresses me as

a violation of the President's rules for sentencing.

Early in its history, this Court condemned the intrusion into the sentence proceedings of service policies calculated to produce a more severe sentence than might otherwise have been imposed on the basis of the evidence before the court. *United States v. Davis*, 8 U.S.C.M.A. 425, 24 C.M.R. 235 (1957). The rationale of those cases finds expression in the current Manual's prohibition of reference by trial counsel to "any policy directive relative to punishment." Paragraph 75*f*, Manual, *supra*. It seems to me that to increase an accused's punishment out of a desire to have that sentence act as a possible deterrent to prevent others from engaging in similar conduct reflects a policy basis of aggravation of punishment so similar to that excluded by the Manual as to be condemned by our earlier cases. Scrutinizing the record of the present case, I cannot conclude that the error was purged of its adverse effects. I would, therefore, reverse the decision of the Court of Military Review as to the sentence.